**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **CORRECT TRANSMISSION LLC,** | § | |
| *Plaintiff,* | § | |
| | § | **6:20-CV-00669-ADA** |
| **v.** | § | |
| | § | |
| **ADTRAN, INC.** | § | |
| *Defendant.* | § | |

**ORDER GRANTING DEFENDANT ADTRAN'S MOTION TO DISMISS FOR**
**IMPROPER VENUE OR TO TRANSFER  VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

This is an action for patent infringement allegedly committed by defendant ADTRAN, Inc. ADTRAN now moves to dismiss the above case for improper venue or to transfer venue to the Northern District of Alabama pursuant to 28 U.S.C. § 1406(a). ADTRAN filed its initial motion on September 14, 2020. ECF No. 10. Plaintiff Correct Transmission filed its Reply on April 2, 2021, ECF No. 51, and ADTRAN filed a Reply in Support of its Motion on April 9, 2021. ECF No. 52. After considering all related pleadings and the relevant law, the Court is of the opinion that ADTRAN's Motion to Dismiss for Improper Venue and Motion to Transfer should be **GRANTED**.

**FACTUAL BACKGROUND**

Correct Transmission filed its complaint for patent infringement on July 23, 2020, asserting U.S. Patent Nos. 6,876,669; 7,127,523; 7,283,465; 7,768,928; and 7,983,150 ("Patents-in-Suit") against ADTRAN. ECF No. 1 at 4. The same day that Correct Transmission filed its suit against ADTRAN, Correct Transmission filed a complaint against Juniper Networks, Inc., asserting the same Patents-in-Suit. ADTRAN responded to Correct Transmission's patent infringement

complaint by filing the instant Motion to Dismiss for Improper Venue or to Transfer Venue to the Northern District of Alabama.

Both Correct Transmission and ADTRAN are engaged in the manufacture of telecommunications equipment. Correct Transmission is a Limited Liability Company organized in Delaware with its headquarters in Delaware, while ADTRAN is a Delaware corporation with its headquarters in Alabama. ECF No. 1 at 2. ADTRAN has 1,121 employees located in the United States, with 937 of those employees located at its Huntsville, Alabama headquarters. ECF No. 10-1 ("Foliano Decl.") ¶ 4. Additionally, all documents, files, and records pertaining to the design, development, marketing, and technical support of its products within the United States are kept at its headquarters. Foliano Decl. ¶ 9.

ADTRAN maintains no offices in the Western District of Texas but has five employees within the Western District. Foliano Decl. ¶ 22. None were involved in the design or development of any accused product, and none have any special or particularized knowledge regarding the operation of any Accused Product. Foliano Decl. ¶ 23. All ADTRAN employees in Texas, including the five in the Western District, work from their homes. Foliano Decl. ¶ 24. ADTRAN does not own or lease any portion of any employee's home, store inventory or materials in any employee's home, or require any employee to live in Texas as a condition of performing their job. Foliano Decl. ¶ 24.

ADTRAN contracts with a third-party company to provide repair and refurbishment services as an independent contractor. Foliano Decl. ¶29. That contractor's shipping and receiving facility is located in El Paso, Texas, within the Western District. Foliano Decl. ¶ 29. The contractor chooses where to locate its distribution center, and it is not a condition of ADTRAN's contract with them that the contractor distribute from a facility within the Western District of Texas. Foliano

Decl. ¶ 30. ADTRAN employees do not work or perform any day-to-day activities at the facility. Foliano Decl. ¶ 30.

ADTRAN additionally contracted with a third-party company to provide telemarketing services. Foliano Decl. ¶ 31–32. The telemarketing company's office is located at 2800 Wells Branch Parkway in Austin, Texas (hereinafter the Austin office). *Id.* ADTRAN's relationship with the telemarketing company concluded in 2016, four years before Correct Transmission filed its lawsuit. Foliano Decl. ¶ 16.

**STANDARD OF REVIEW**

Firstly, this Court must decide whether the Western District of Texas is a proper venue. If venue is improper, the Court may reach the second issue of whether the Northern District of Alabama is a proper venue to which to transfer this case. In a patent infringement case, "the plaintiff has the burden of establishing proper venue under 28 U.S.C. § 1400(b)." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019).

A plaintiff may file a patent infringement action "in the judicial district where the defendant resides." 28 U.S.C. § 1400(b). The Supreme Court defined residence for purposes of § 1400(b) as the defendant's state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).

Alternatively, a plaintiff may establish proper venue by showing that the defendant committed acts of infringement in the district and has a regular and established place of business. 28 U.S.C. § 1400(b). A defendant has a regular and established place of business if the plaintiff proves first that there is a "physical place in the district"; second that it is a "regular and established

place of business"; and third that it is "the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

If venue is improper, the court must dismiss the case or transfer it to a venue in which the case could have been filed. 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3). A motion for transfer involves a two-step analysis: first, whether the case could have been properly brought in the proposed transferee district; and second, whether transfer would promote the interest of justice and/or the convenience of the parties and witnesses. *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013); *see also In re Volkswagen of America, Inc.,* 545 F.3d 304, 312, 314 (5th Cir. 2004) (en banc).

The Fifth Circuit held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

DISCUSSION

I.  **The Western District of Texas is an improper venue, so Correct Transmission's suit should be dismissed.**

   A.  **ADTRAN does not reside in the Western District of Texas.**

   As a Delaware corporation, defendant ADTRAN is a resident of Delaware. *TC Heartland*, 137 S. Ct. at 1517. Venue would clearly be proper in that District. However, because ADTRAN is not incorporated in Texas, the task remains to decide whether ADTRAN committed acts of infringement and has a regular and established place of business such that venue is proper in the Western District of Texas.

   B.  **Even if ADTRAN committed acts of infringement in this District, venue is still improper.**

   Assuming without deciding that ADTRAN has committed acts of infringement in the Western District, venue is still not proper in this District. For ADTRAN to have a "regular and established place of business," Correct Transmission must prove that ADTRAN has a "physical place in the district," that it is a "regular and established place of business," and that it is "the place of the defendant." *Cray*, 871 F.3d at 1360.

   a.  **The Austin office is not a regular and established business because it fails the *Cray* test.**

   First, the Austin office fails the *Cray* test because the relationship between ADTRAN and Harte-Hanks ended before the date of filing. Foliano Decl. ¶ 16. Contrary to Correct Transmission's arguments in its Reply, this Court conducts venue analysis based on the facts as of the date the plaintiff files suit. *Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017).

   Even if this Court were to stray from precedent and conduct its analysis based on the facts as of the date of alleged infringement, the Austin Office still fails the *Cray* test. Correct

Transmission alleges that ADTRAN maintains an office at 2800 Wells Branch Parkway in Austin, Texas. ECF No. 1 at 3. This is indeed a "physical place" in the Western District. However, even if it was "regular and established," it fails the third element: the Austin office is not "the place of the defendant," nor has it ever been. Foliano Decl. ¶ 16.

Previously, ADTRAN engaged the services of the telemarketing firm Harte-Hanks, based in Austin. *Id.* at ¶¶ 31–32. ADTRAN engaged the firm as an independent contractor, and their relationship concluded in 2016. *Id.* Even if ADTRAN continued to retain Harte-Hanks' services at the time of suit, an independent contractor relationship is insufficient to satisfy the third element of *Cray*. 871 F.3d at 1363. As the *Cray* court noted, "the *defendant* must establish or ratify the place of business." *Id.* (emphasis added); *see also Talsk Research Inc. v. Evernote Corp.*, 2017 WL 4269004 (N.D. Ill. 2017) (Rejecting the argument that "non-employee, independent contractors present in this District constitute a "regular and established place of business" for Defendant within the meaning of § 1400(b)."). Far from "establish[ing] or ratify[ing]" the Wells Branch office, ADTRAN explicitly disavowed any past or present interest in the location. Foliano Decl. ¶ 16.

### b. The El Paso facility is also not a regular and established business because it fails the *Cray* test.

Besides the Austin office, Correct Transmission urges that a distribution center in El Paso owned by Palco Telecom Services is ADTRAN's regular and established place of business. ECF No. 51 at 4. However, this argument falls victim to the same analytical misstep as Correct Transmission's argument for the Austin office: since ADTRAN engaged Palco as an independent contractor, its facility cannot be ADTRAN's regular and established place of business. Foliano Decl. ¶ 30; *Cray*, 871 F.3d at 1363.

### c. ADTRAN Employees' homes are not regular and established businesses because they fail the *Cray* test.

Lastly, Correct transmission argues that the homes of "multiple employees in the Western District of Texas" constitute ADTRAN's regularly established places of business. ECF No. 1 at 4. Since Correct Transmission focuses exclusively on the home of ADTRAN employee Ruben Guerra in its pleadings, this Court will also analyze whether Guerra's particular home is ADTRAN's regularly established place of business at the time of filing.

Neither party disputes that ADTRAN employee Ruben Guerra lives within the Western District of Texas and works from his home as a sales engineer. Foliano Decl. ¶¶ 22–23. However, even if Guerra's home meets the regular and established prong of *Cray*, it fails the third element because ADTRAN did not "establish or ratify" Guerra's home as his place of work. *Cray*, 871 F.3d at 1363. Guerra works from his Austin-area home of his own accord, not because of any requirement by ADTRAN. Foliano Decl. ¶ 24. As in *Cray*, ADTRAN does not "own, rent, or lease any portion" of Guerra's home, nor does it store inventory there. *Id.*; *see also Cray*, 871 F.3d at 1365 (Holding that a corporation that did not "own, rent, or lease any portion" of its employee's home and stored no inventory at the home did not have a regular and established place of business there).

Although this analysis focuses explicitly on Guerra's home, the same analysis applies to ADTRAN's other employees in the Western District of Texas, all of whom work from their homes of their own accord. Foliano Decl. ¶ 24. Thus, no ADTRAN employee's home qualifies as a regularly established place of business.

**II. The Northern District of Alabama is a proper venue, and the *Volkswagen* factors weigh in favor of transfer.**

Having established that the Western District of Texas is an improper venue, Correct Transmission could have and should have brought this suit in Alabama. The Northern District of Alabama satisfies both elements of 28 U.S.C. § 1400(b): first, since ADTRAN manufactured the Accused Products in Alabama, the Court assumes without deciding that ADTRAN committed acts of infringement in the District; second, ADTRAN has a regular and established place of business there. 28 U.S.C. § 1400(b). Indeed, ADTRAN's corporate headquarters, manufacturing, and technical support facilities are all in Alabama – physical places in the district that are regular and established places of business and belong to the defendant. Foliano Decl. ¶¶ 7–8, 10; 28 U.S.C. § 1400(b). Therefore, venue is proper in the Northern District of Alabama.

**A. The private *Volkswagen* factors favor transfer to Alabama.**

**a. The "relative ease of access to sources of proof" factor favors transfer.**

Correct Transmission's treatment of this factor does not argue that it supports keeping the case in Waco. ECF No. 51 at 16 n.10.  Regardless, as noted above, ADTRAN's corporate headquarters as well as the Accused Products' place of manufacture is located in the Northern District of Alabama only five miles from the Huntsville courthouse. Sayles Decl. ¶ 4. Although Correct Transmission points out that most of the relevant evidence in this case is electronic, this factor is relevant regardless of the method of storage, and ADTRAN's documents are stored in Alabama. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (Noting that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Because relevant evidence is stored in Alabama, albeit electronically, this factor weighs in favor of transfer.

### b. The "compulsory process" factor favors transfer.

Similarly, Correct Transmission does not dispute that ADTRAN identified two relevant witnesses who live within the Northern District of Alabama. ECF No. 51 at 18; Foliano Decl. ¶ 13. Importantly, this Court cannot compel those witnesses to travel the more than 750 miles from Huntsville to Waco. A court's subpoena power extends at most to the borders of a *party* witness' state of residence, employment, or in-person business, so long as he does not incur substantial expense. Fed. R. Civ. P. 45(c)(1). For non-party witnesses like the two former employees at issue here, the Court's subpoena power is neutered even further – the Court cannot compel them to travel more than 100 miles from their place of residence. *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, 6:13-CV-362, 2014 WL 10748106 at *5 (W.D. Tex. June 11, 2014). Furthermore, all other witnesses ADTRAN intends to call are located within the Northern District of Alabama. ECF No. 10-2 ("Sayles Decl.") ¶¶ 4–5. Because relevant witnesses are all located out of reach of this Court, this factor weighs strongly in favor of transfer.

### c. The "cost of attendance for willing witnesses" factor favors transfer.

Additionally, this Court has previously held that "[t]he convenience of the witnesses is probably the single most important factor in the transfer analysis." *Affinity Labs*, 2014 WL 10748106 at *4. The Fifth Circuit explained that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Radmax*, 720 F.3d at 288–289 (internal quotation marks omitted). Here, the distance between the Waco and Huntsville courthouses is over 750 miles. Sayles Decl. ¶ 3.

Also, every ADTRAN witness is located in the Northern District of Alabama. Foliano Decl. ¶¶ 7–8, 10. The cost to these witnesses to travel over 750 miles from their home and

workplace is substantially higher than the cost to travel to the Huntsville courthouse. This factor holds even more weight considering that Correct Transmission is a Delaware company with its principal place of business in Delaware – an Alabama venue is several hundred miles closer than the existing venue in Texas.

Although Correct Transmission argues that its concurrently pending suit against Juniper Networks in Waco makes it more convenient for its out-of-country witnesses to travel to one US location (i.e., Waco), that argument is misplaced. The *Juniper* case is also subject to a pending motion to transfer, No. 6:20-cv-670, Dkt. 20 (Oct. 13, 2020), and co-pending cases are only a relevant consideration against transfer where venue is not challenged in the co-pending case. *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). Because the cost of attendance for both parties is less in Alabama and Correct Transmission's co-pending case in this Court is subject to a motion to transfer, this factor favors transfer.

### d.  The "all other practical problems" factor favors transfer.

Lastly, this Court has previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District. *DataQuill, Ltd. v. Apple, Inc.*, A-13-CA-706-SS, 2014 WL 2722201 at *4 (W.D. Tex. June 13, 2014). As in *DataQuill*, ADTRAN's witnesses are all located in the transferee forum. Furthermore, Correct Transmission does not have a presence in the Western District of Texas besides filing this and other lawsuits, and the Fifth Circuit "forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer…." *In re Nintendo Co., Ltd.*, 589 F.3d at 1200.

Even so, Correct Transmission asserts that judicial economy is best served by having the same judge preside over its two pending lawsuits involving the same patents-in-suit. ECL No.51

at 17. However, "the judicial economy of having the same judge handle multiple suits involving the same patents should [not] dominate the transfer inquiry." *EMC*, 501 F. App'x at 976. Where multiple other factors weigh in favor of transfer and the plaintiff has no connection to this District, the possibility of judicial economy gained through a co-pending case where venue is challenged does not tip the balance of this factor against transfer.

### B. The public *Volkswagen* factors favor transfer to Alabama.

#### a. The "local interest" factor favors transfer.

The first public interest factor favors the Northern District of Alabama. ADTRAN is headquartered in the Northern District, and "the district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case." *Affinity Labs*, 2014 WL 10748106 at *3. The possibility that Accused Products may have been sold into the Western District is not enough to override the fact that infringement allegations "call into question the work and reputation" of residents of the Northern District of Alabama. *DataQuill*, 2014 WL 2722201 at *4. Furthermore, "the mere presence of accused products in a district does not create a local interest." *Id.* Correct Transmission does not dispute these facts but argues that ADTRAN's "presence within this District for the last two decades" is sufficient to override ADTRAN's much larger presence within Alabama. ECF No. 51 at 16, n.11. This argument is misplaced. ADTRAN's connections to this District are insufficient to establish proper venue in this District to begin with. Therefore, this factor weighs in favor of transfer.

#### b. The remaining public *Volkswagen* factors are not dispositive.

The remaining public interest factors are neutral. Both districts are familiar with the uniform body of federal patent law overseen by the Federal Circuit, and there are no issues with conflict of laws or foreign law. Thus, both factors are neutral.

Correct Transmission argues that the shorter average time to trial in the Western District shifts the administrative difficulties factor against transfer. However, even if this does favor the Western District, "where several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164, at *3 (Fed. Cir. July 28, 2020) (internal quotation marks omitted). Therefore, even if the administrative difficulties factor favors the Western District, this does not outweigh the five other factors that weigh in favor of transfer and the two that are outright neutral.

**CONCLUSION**

Because Correct Transmission did not adequately plead proper venue for its patent infringement claim under § 1400(b), Correct Transmission's patent infringement claim is **DISMISSED**. Additionally, because the balance of *Volkswagen* private and public interest factors shows that the Northern District of Alabama is a clearly more convenient venue, ADTRAN's Motion to Transfer is **GRANTED** and this case is **CLOSED**.

SIGNED this ___17th___day of May, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE